## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEBRA CARTER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | **CLASS ACTION COMPLAINT FOR** |
| KINDRED HEALTHCARE, INC., PHYLLIS R. YALE, FREDERICK JOHN KLEISNER, CHRISTOPHER T. HJELM, JONATHAN D. BLUM, LYNN T. SIMON, JOEL ACKERMAN, PAUL J. DIAZ, RICHARD A. GOODMAN, SHARAD S. MANSUKANI, BENJAMIN A. BREIER and HEYWARD R. DONIGAN, | ) ) ) ) ) ) ) ) ) | **VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

Plaintiff Debra Carter ("Plaintiff"), by her undersigned attorneys, alleges upon personal knowledge with respect to herself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action is brought as a class action by Plaintiff on behalf of herself and the other public holders of the common stock of Kindred Healthcare, Inc. ("Kindred" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Kindred, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between Kindred and certain affiliates of TPG Global, LLC, Welsh Carson, Anderson & Stowe and Humana, Inc. (the "Syndicate").

2.      On December 19, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $9.00 in cash for each share of Kindred stock they own (the "Merger Consideration") for a total value of approximately $4.1 billion.

3.      On February 5, 2018, in order to convince Kindred shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The materially incomplete and misleading Proxy independently violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning the financial forecasts for the Company that were prepared by the Company and relied upon by the Board in recommending the Company's shareholders vote in favor of the Proposed Merger.  The financial forecasts were also utilized by Kindred's financial advisors, Barclays Capital Inc. ("Barclays") and Guggenheim Securities, LLC ("Guggenheim"), in conducting the valuation analyses in support of its fairness opinion.

6.      It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming stockholder vote to allow the Company's stockholders to make an informed decision regarding the Proposed Merger.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to Kindred shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Kindred is incorporated in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of Kindred common stock.

12.     Defendant Kindred is incorporated in Delaware and maintains its principal executive offices at 680 South Fourth Avenue, Louisville, Kentucky 40202. The Company's common stock trades on the New York Stock Exchange under the ticker symbol "KND".

13.     Individual Defendant Phyllis R. Yale has served as Chairman of the Board since 2014 and has served as a director since 2010.

14.     Individual Defendant Frederick John Kleisner has served as a director of the Company since 2009.

15.     Individual Defendant Christopher T. Hjelm has served as a director of the Company since 2011.

16.     Individual Defendant Jonathan D. Blum has served as a director of the Company since 2008.

17.     Individual Defendant Lynn T. Simon has served as a director of the Company since November 2016.

18.     Individual Defendant Joel Ackerman has served as a director of the Company since 2008.

19.     Individual Defendant Paul J. Diaz has served as a director of the Company since March 2016.

20.     Individual Defendant Richard A. Goodman has served as a director of the Company since 2014.

21.     Individual Defendant Sharad S. Mansukani has served as a director of the Company since 2015 and has been a senior advisor to TPG Global, LLC since 2005.

22.     Individual Defendant Benjamin A. Breier has served as Chief Executive Officer, President, and a director of the Company since 2015.

23.     Individual Defendant Heyward R. Donigan has served as a director of the Company since 2014.

24.     The Individual Defendants referred to in paragraphs 13-23 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the other public shareholders of Kindred (the "Class").   Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

26.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of February 5, 2018, there were approximately 91,322,323 shares of Kindred common stock outstanding, held by hundreds of individuals and entities scattered throughout the country.  The actual number of public shareholders of Kindred will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly

comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

iii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.     The Proposed Merger**

27.     Kindred provides healthcare services, which includes home health, hospice, and community care; long-term acute care; inpatient rehabilitation; contract rehabilitation; non-medical home care; nursing; and assisted living.  The company was founded in 1998 and is headquartered in Louisville, Kentucky.

28.     On December 4, 2017, Kindred and Syndicate issued a press release announcing the Proposed Merger, which states in pertinent part:

> LOUISVILLE, Ky. – December 19, 2017 – Kindred Healthcare, Inc. ("Kindred" or "the Company") (NYSE:KND) today announced that its Board of Directors has approved a definitive agreement under which it will be acquired by a consortium of three companies: TPG Capital ("TPG"), Welsh, Carson, Anderson & Stowe ("WCAS") and Humana Inc. ("Humana") (NYSE: HUM) (together, the "consortium") for approximately $4.1 billion in cash including the assumption or repayment of net debt.

> Under the terms of the agreement, Kindred stockholders will receive $9.00 in cash for each share of Kindred common stock they hold, representing a premium of approximately 27 percent to Kindred's 90-day volume weighted average price ("VWAP") for the period ending December 15, 2017, the last trading day prior to media reports regarding the potential transaction.

> Kindred operates home health, hospice and community care businesses, long-term acute care ("LTAC") hospitals, inpatient rehabilitation facilities ("IRF") and a contract rehabilitation services business. Immediately following the acquisition of Kindred, the home health, hospice and community care businesses will be separated from Kindred and operated as a standalone company owned 40 percent by Humana, with the remaining 60 percent owned by TPG and WCAS ("Kindred at Home"). Humana will have a right to buy the remaining ownership interest in Kindred at Home over time through a put/call arrangement. Kindred's LTAC hospitals, IRFs and contract rehabilitation services businesses will be operated as a separate specialty hospital company owned by TPG and WCAS ("Kindred Healthcare").

> Benjamin A. Breier, President and Chief Executive Officer of Kindred, said, "We are pleased to have reached this agreement, which will deliver significant cash value to Kindred's stockholders and concludes a robust strategic review undertaken by the Board and management team over the course of 2017. We believe this agreement maximizes value for stockholders and represents a significant step forward in transforming home healthcare in America by enhancing access to care

and reducing costs for people living with chronic conditions. In addition, the specialty hospital company, Kindred Healthcare, will be uniquely positioned to care for the most medically-complex and rehab-intensive populations."

Continued Mr. Breier, "The flexibility and resources gained through the investments by Humana, TPG and WCAS are expected to enhance innovation in both platforms, further our culture of a patient-first approach to high-quality, compassionate care and create new opportunities for Kindred employees."

Bruce D. Broussard, Humana's President and Chief Executive Officer, said, "Humana is focused on enhancing our capabilities for care in the home to prioritize patient wellness while delivering high-quality care in a low-cost setting. This transaction with Kindred underscores the successful and ongoing execution of our strategy by joining with the most geographically diverse home healthcare provider in the country. We are confident that these new capabilities will help Humana continue to modernize home health and meaningfully improve the member and provider experience. We look forward to completing this strategic transaction with TPG and WCAS."

"TPG's healthcare team has a long history of partnering with companies and management teams that hold significant growth potential," said Jeff Rhodes, Partner at TPG. "We believe this transaction will provide Kindred with additional resources and focus to drive significant value for all stakeholders. We look forward to partnering with Humana, WCAS and the management team at Kindred to build on the complementary capabilities this transaction brings together. We are excited to build the new companies and invest behind best in class clinical care."

D. Scott Mackesy, WCAS's Managing Partner, said, "WCAS's healthcare franchise has been built around partnering with excellent management teams and providing incremental resources to drive above market growth. We have a long history of creative dealmaking with corporate partners and look forward to working with Humana, TPG and Kindred's management team to deliver the highest quality, most cost-efficient healthcare to all."

Debra A. Cafaro, Chairman and Chief Executive Officer of Ventas, Inc. ("Ventas") (NYSE: VTR), said, "As the premier capital provider for leading healthcare companies and long-standing partners to Kindred, we are delighted to support Kindred and this transaction. It creates the nation's foremost LTAC, IRF and contract rehabilitation services operator with improved financial strength. The specialty hospital company, Kindred Healthcare, brings together Kindred's outstanding management team as well as experienced private equity partners with strong healthcare backgrounds. We look forward to deepening our partnership with Kindred's sponsors and building on the strong relationship we have developed with Kindred over many years to continue transforming care for the aging population."

29.     The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth. For instance, the Company has reported triple digit free cash flow growth for 2015 and 2016.  Moreover, the Company also recently reported double digit growth to net income for the fiscal quarter ending September 30, 2017.

30.     In sum, it appears that Kindred is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders.   It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.     The Materially Incomplete and Misleading Proxy

31.     On February 5, 2018, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.   The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.   Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *Financial Forecasts that Violate Regulation G and SEC Rule 14a-9*

32.     The Proxy discloses certain financial forecasts for the Company on page 95 of the Proxy.   However, the Proxy fails to provide material information concerning the Company's financial forecasts, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger.   Proxy 95.

33.     Specifically, the Proxy provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as EBITDAR and EBITDA, but fails to provide: (i) any of the line items used to calculate these non-GAAP measures, nor (ii) a reconciliation of these

non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy 95.

34.     When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all forecasts and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

35.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Kindred included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.   Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be

considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

36.     The SEC has repeatedly emphasized that disclosure of non-GAAP forecasts can be inherently misleading, and has therefore heightened its scrutiny of the use of such forecasts.[2] Indeed, the SEC's Division of Corporation Finance released a new and updated Compliance and Disclosure Interpretation ("C&DIs") on the use of non-GAAP financial measures to clarify the extremely narrow and limited circumstances, known as the business combination exemption, where Regulation G would not apply.[3]

37.     More importantly, the C&DI clarifies when the business combination exemption does not apply:

> There is an exemption from Regulation G and Item 10(e) of Regulation S-K for non-GAAP financial measures disclosed in communications subject to Securities Act Rule 425 and Exchange Act Rules 14a-12 and 14d-2(b)(2); it is also intended to apply to communications subject to Exchange Act Rule 14d-9(a)(2). This exemption does not extend beyond such communications. Consequently, if the same non-GAAP financial measure that was included in a communication filed under one of those rules is also disclosed in a Securities Act registration statement, proxy statement, or tender offer statement, this exemption from Regulation G and Item 10(e) of Regulation S-K would not be available for that non-GAAP financial measure.

*Id.*

---

[1]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html. (emphasis added)

[2]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3]     *Non-GAAP Financial Measures*, U.S. Securities and Exchange Commission (Oct. 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm#101.  To be sure, there are other situations where Regulation G would not apply but are not applicable here.

38.     Thus, the C&DI makes clear that the so-called "business combination" exemption from the Regulation G non-GAAP to GAAP reconciliation requirement applies solely to the extent that a third-party such as financial banker has utilized projected non-GAAP financial measures to render a report or opinion to the Board.  To the extent the Board also examined and relied on internal financial forecasts to recommend a transaction, Regulation G applies.

39.     Because the Proxy explicitly discloses that the forecasts were provided by the Company to the Board "in connection with Kindred's evaluation of strategic alternatives", no exemption from Regulation G is applicable. Proxy 95.

40.     Thus, to bring the Proxy into compliance with Regulation G as well as cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information on page 45, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

41.     At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy not misleading.  Indeed, the Defendants acknowledge the misleading nature of non-GAAP forecasts, as Kindred stockholders are cautioned:

> Certain of the measures included in the Projections may be considered non-GAAP financial measures. Non-GAAP financial measures should not be considered in isolation from, or as a substitute for or superior to, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by Kindred may not be comparable to similarly titled amounts used by other companies.

Proxy, 96.

### The Materially Misleading Financial Analyses

42.     The financial projections at issue were relied upon by the Company's financial advisors, Barclays and Guggenheim, in connection with their respective valuation analyses and

fairness opinions.  Proxy, 76, 85.  The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently.  Once a registration statement discloses internal projections relied upon by the Board, those projections must be complete and accurate.

43.    With respect to Barclays' *Discounted Cash Flow Analysis*, the Proxy states that Barclays based its discounted cash flow analysis on the Company's "after-tax unlevered free cash flows of Kindred for the three months ending December 31, 2017 and each of the fiscal years 2018 through 2022, calculated based upon the Kindred projections and guidance from Kindred management."  Proxy, 76.

44.    More specifically, the Proxy defines the UFCF projections utilized by Barclays as "the tax-affected earnings before interest, tax expense and amortization, with such amount treating stock-based compensation as a cash expense, adding depreciation, and subtracting capital expenditures, changes in working capital, noncontrolling interest distributions and certain other projected net cash outflows, per Kindred management."  Proxy, 76.

45.    Compounding on the misleading nature of the unlevered free cash flow ("UFCF") projections utilized by Barclays, the Proxy also discloses that Guggenheim conducted its *Discounted Cash Flow Analysis* based on the Company's UFCF, which is defined as:  "after-tax operating cash flow (after deduction of stock-based compensation), plus depreciation expense and less capital expenditures, increases in net working capital, and any other adjustments (including cash release and costs from insurance restructuring, non-controlling interest expense, and ongoing rental payments associated with certain divested and/or closed long-term acute care hospitals)."  Proxy, 88-89.

46.     Despite disclosing that the UFCF projections utilized by both Barclays and Guggenheim were provided by the Company's management, the Proxy fails to disclose the actual projected values of UFCF, the values of the line items utilized to calculate UFCF, or whether the UFCF projections utilized by Barclays and Guggenheim were the same.  The absence of this information renders both discounted cash flow analyses incomplete and misleading.

47.     The definition of projected after-tax UFCF is, in and of itself, and separate and apart from the mandates of Regulation G, materially false and/or misleading in violation of SEC Rule 14a-9 (17 C.F.R. 240.14a-9).  Because neither the method nor the line items used to calculate projected UFCF were not disclosed, shareholders are unable to discern the veracity of the financial advisors' discounted cash flow analyses.  Without further disclosure, shareholders are unable to compare the UFCF calculations with the Company's financial projections.  Thus, the Company's shareholders are being materially misled regarding the value of the Company.

48.     These key inputs are material to Kindred shareholders, and their omission renders the summary of both discounted cash flow analyses incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections, and then makes several key choices, "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value . . . " *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value… The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

49.     Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part on the following:

- the Board considered the potential values, benefits, risks and uncertainties facing Kindred stockholders associated with possible strategic alternatives to the merger (including divestitures, spin-offs, acquisitions and capital raises), and the timing and likelihood of accomplishing such alternatives, taking into account the fact that Kindred had engaged in extensive discussions with potential acquirors for more than a year preceding the announcement of the transaction;

- The Board considered Kindred's future prospects if Kindred were to remain an independent standalone public company;

- The Board considered the respective financial analyses of Barclays and Guggenheim Securities, as well as the respective opinions of each of Barclays and Guggenheim Securities, rendered orally on December 18, 2017 and subsequently confirmed in writing, to the Board that, as of such date and based upon and subject to the qualifications, limitations, factors and assumptions stated in each opinion, from a financial point of view, the merger consideration to be received by Kindred stockholders (other than holders of excluded shares) pursuant to the merger agreement was fair to such stockholders.

Proxy 67-69.

50.     In sum, the Proxy independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to its most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Merger from Kindred shareholders.

51.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the

Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

52.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

54.    As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

55.    The failure to reconcile the numerous non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and
Rule 14a-9 Promulgated Thereunder)**

56.     Plaintiff incorporates each and every allegation set forth above as if fully set forth
herein.

57.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy statements
that contain "any statement which, at the time and in the light of the circumstances under which it
is made, is false or misleading with respect to any material fact, or which omits to state any material
fact necessary in order to make the statements therein not false or misleading[.]"  17 C.F.R. §
240.14a-9.

58.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing]
public a non-GAAP financial measure that, taken together with the information accompanying that
measure, contains an untrue statement of a material fact or omits to state a material fact necessary
in order to make the presentation of the non-GAAP financial measure . . . not misleading."  17
C.F.R. § 244.100(b).

59.     Defendants have issued the Proxy with the intention of soliciting shareholder
support for the Proposed Merger.   Each of the Defendants reviewed and authorized the
dissemination of the Proxy, which fails to provide critical information regarding, amongst other
things, the financial forecasts for the Company and Syndicate.

60.     In so doing, Defendants made untrue statements of fact and/or omitted material
facts necessary to make the statements made not misleading.  Each of the Individual Defendants,
by virtue of their roles as officers and/or directors, were aware of the omitted information but failed
to disclose such information, in violation of Section 14(a).  The Individual Defendants were
therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

61.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

62.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

63.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial forecasts.

64.     Kindred is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

65.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

66.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

67.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68.     The Individual Defendants acted as controlling persons of Kindred within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Kindred, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

69.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The Proxy at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing the Proxy.

71.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

72.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

73.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

74.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless

and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 13, 2018

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: _/s/ Michael Van Gorder_
Michael Van Gorder (#6214)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*